UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DERRICK ALLEN,

    Petitioner,

v.      Case No. 3:16-cv-634(RNC)

UNITED STATES,

    Respondent.

RULING AND ORDER

In 2011, petitioner Derrick Allen pleaded guilty to unlawful possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1) and was sentenced to prison for 15 years. He moves pursuant to 28 U.S.C. § 2255 to vacate his sentence claiming that it was improperly enhanced under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) ("ACCA"), which requires a sentence of fifteen years for a person convicted of unlawful possession of a firearm who has three prior convictions for a "violent felony" or "serious drug offense." Id. Petitioner concedes that he has two prior convictions for a serious drug offense for purposes of the fifteen-year mandatory minimum under the ACCA, but disputes that he has a prior conviction for a violent felony. In support of his motion to vacate his sentence, he relies on Johnson v. United States, 135 S. Ct. 2551 (2015), which invalidated the

1

residual clause of the ACCA's definition of the term "violent felony" as unconstitutionally vague. Id. at 2557. Without the residual clause to fall back on, he argues, the government is unable to prove that his sentence comports with the ACCA.

The government does not take issue with petitioner's assertion that his sentence was enhanced under the residual clause of the ACCA. Instead, it argues that a collateral attack waiver in the written plea agreement bars his claim. In addition, it argues that the claim is meritless because petitioner has two prior convictions that support his sentence under another part of the ACCA's definition of a "violent felony," known as the "elements clause," which survived Johnson. See 18 U.S.C. § 924(e)(2)(B)(i) (defining "violent felony" as any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another"); see Stokeling v. United States, 139 S.Ct. 544 (2019).

I agree with both of the government's arguments and therefore deny the motion. In doing so, however, I grant a certificate of appealability.

I.  Background

Petitioner pleaded guilty pursuant to a written plea agreement in which he stipulated that his criminal record included four ACCA predicate offenses: two prior convictions for a serious drug offense and two prior convictions for a violent

2

felony. In accordance with petitioner's concession that he was subject to increased punishment under the ACCA, the plea agreement stipulated that his offense carried a mandatory minimum sentence of fifteen years.

The plea agreement contained the following collateral attack waiver:

> The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The defendant agrees not to appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence imposed by the Court if that sentence does not exceed 188 months, a 5-year term of supervised release, and a $150,000 fine, even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree not to appeal or collaterally attack the Court's imposition of a sentence of imprisonment concurrently or consecutively, in whole or in part, with any other sentence. The defendant acknowledges that he is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver.

At the change of plea hearing, Judge Burns canvassed petitioner regarding the plea agreement. Petitioner stated under oath that he had read the agreement, understood its contents, and was pleading guilty of his own free will. Regarding the collateral attack waiver, Judge Burns stated, "[A]s long as I don't give you a sentence which exceeds 188 months, a 5-year term of supervised release, and a $150,000

3

fine, you are giving up your right to take an appeal from my sentence or to attack it by any other legal means. Do you understand that, sir?" Petitioner responded, "Yes, ma'am."

On August 2, 2012, Judge Burns imposed the mandatory minimum sentence of fifteen years required by the ACCA. Petitioner did not appeal. Petitioner brought the present motion after the Supreme Court ruled that Johnson applies retroactively to cases on initial collateral review. See Welch v. United States, 136 S.Ct. 1257, 1261 (2016).

II. Discussion

    A. Petitioner's Collateral Attack Waiver Bars His Claim

In response to petitioner's motion, the government first argues that petitioner's challenge to his sentence is barred by the collateral attack waiver in the plea agreement. The Second Circuit has held that a knowing and voluntary waiver of the right to collaterally attack a sentence bars a claim that the sentence is invalid after Johnson. See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016). Petitioner does not contend that the waiver in his plea agreement was other than knowing and voluntary. Rather, he distinguishes Sanford on the ground that it involved a challenge to a sentence imposed under the career offender provision of the Sentencing Guidelines. He

4

submits that considerations of fairness and equity weigh heavily in favor of reading Sanford as narrowly as possible.[1]

I agree with the government that petitioner's challenge to his sentence is barred by the collateral attack waiver in the plea agreement. The holding in Sanford reflects the established principle that a defendant who has knowingly and voluntarily waived the right to attack his sentence as part of a plea agreement may not attack the legality of a sentence that was imposed in conformity with the agreement. As Sanford recognizes, exceptions to the enforceability of an otherwise valid waiver are available in narrowly circumscribed circumstances, for example, "when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases." Id. at 580 (quoting United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000)). But a

---

[1] Petitioner also argues that his Johnson claim is available under the Supreme Court's recent decision in Class v. United States, 138 S. Ct. 798 (2018). Class held that "a guilty plea [does not] bar a criminal defendant from later appealing his conviction on the ground that the statute of conviction violates the Constitution," even when the defendant waived his right to appeal his sentence. Id. at 801-802. However, in Class, by challenging the constitutionality of the statute of conviction, the defendant questioned the state's very power to prosecute him. Id. at 805. Here, by contrast, petitioner only attacks his sentence. See United States v. Peppers, 899 F.3d 211, 225 n.7 (3d Cir. 2018) ("[Class] does not bear on our resolution of whether [the defendant's] plea precludes his Johnson claim because [the defendant] is not collaterally attacking the constitutionality of the statute underlying his conviction.").

5

change in the law does not in itself create such an exceptional circumstance. See Sanford, 841 F.3d at 580 (stating that defendant's inability to foresee change in the law does not provide a basis for failing to enforce collateral attack waiver; possibility of favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements).

In the absence of an extraordinary circumstance of the type referred to in Sanford, the principle underlying Sanford requires enforcement of a collateral attack waiver in a plea agreement in accordance with its terms. See Sanford, 841 F.3d at 581 ("Sanford's collateral attack waiver therefore bars the present motion because the waiver encompasses any challenge to his sentence."). Petitioner's attempt to distinguish Sanford on the ground that it involved a sentence under the career offender provision of the Guidelines is therefore unavailing.[2]

B. Petitioner's Armed Career Criminal Status

Turning to the merits, petitioner's sentence comports with the ACCA if he has at least one prior conviction for a "violent felony" within the meaning of the elements clause, 18 U.S.C. §

---

[2] Nothing in Sanford suggests that the Court would have permitted the claim to proceed if the petitioner's sentence had been enhanced under the ACCA. Even so, because Sanford does not necessarily foreclose petitioner's argument, a certificate of appealability is granted on this issue.

6

924(e)(2)(B)(i).  The government contends that he has two such convictions: a Connecticut conviction for second degree assault and a Georgia conviction for aggravated assault.[3]  Petitioner contends that neither conviction can be relied on to support his sentence.  I think the record is sufficient to establish that both convictions are predicate offenses under the ACCA.

The elements clause defines a violent felony as any crime that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  The word "use" requires active employment of physical force.  Leocal v. Ashcroft, 543 U.S. 1, 9 (2004).  "[T]he phrase 'physical force' means violent force – that is, force capable of causing physical pain or injury to another person."  (Curtis) Johnson v. United States, 559 U.S. 133, 140 (2010).  The issue is therefore whether either of the assault convictions on which the government relies includes, as an element, the use of violent force within the meaning of the ACCA.

"The Supreme Court has instructed that in determining whether a state criminal statute qualifies as an ACCA predicate offense, courts are to use the so-called 'categorical approach,'

---

[3] The government no longer relies on petitioner's Connecticut conviction for conspiracy to commit first degree assault.  ECF No. 15 at 2.

7

and, when the state statute has subdivisions, courts are to use the so-called 'modified categorical approach.'" Villanueva v. United States, 893 F.3d 123, 128 (2d Cir. 2018) (citing Descamps v. United States, 570 U.S. 254 (2013)). "Under [the modified categorical] approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Mathis v. United States, 136 S. Ct. 2243, 2249 (2016); see Descamps, 570 U.S. at 262 (sentencing courts are permitted to "examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction"); see also Shepard v. United States, 544 U.S. 13, 26 (2005) (limiting inquiry to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant . . . , or to some comparable judicial record of this information"). Under either the general or modified categorical approach, courts ascertain the minimum criminal conduct necessary for conviction under the applicable statute or subsection. Villanueva, 893 F.3d at 128.

   1. Connecticut Conviction for Second Degree Assault

   On October 10, 2000, petitioner was convicted in Connecticut Superior Court of assault in the second degree in

violation of Conn. Gen. Stat. § 53a-60.  At that time, the statute provided as follows:

> (a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or (4) for a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical impairment or injury to another person by administering to such person, without his consent, a drug, substance or preparation capable of producing the same; or (5) he is a parolee from a correctional institution and with intent to cause physical injury to an employee of the department of correction or an employee or member of the board of parole, he causes physical injury to such employee or member.

Conn. Gen. Stat. § 53a-60.

Petitioner argues that this conviction cannot serve as a predicate offense for purposes of the ACCA because the record does not establish the subsection of the statute under which he pleaded guilty and at least one of the subsections does not require violent force.  See United States v. Moreno, 821 F.3d 223, 228 (2d Cir. 2016) (a violation of Conn. Gen. Stat. § 53a-60 is not categorically a "crime of violence" under 18 U.S.C. § 16(a) because at least one of its subsections does not constitute such a crime).  The government responds that

petitioner's conviction necessarily rested on a violation of subsection (2), which does qualify as a violent felony.

That a guilty plea necessarily rested on the elements of a predicate offense under the ACCA may be shown by "proof that the charge was narrowed to include only predicate conduct." United States v. Savage, 542 F.3d 959, 996 (2d Cir. 2008). In support of its argument here, the government points to the transcript of the hearing at which petitioner pleaded guilty. ECF 11-8. In the government's view, the transcript establishes that petitioner was convicted under subsection (2). I agree.

As the transcript shows, the judge explained to petitioner that "[a]n assault in the second degree occurs when a person with intent to cause another person physical pain causes that person or a third person physical pain, but does so by using a deadly weapon or dangerous instrument." ECF No. 11-8 at 6. The judge then asked petitioner, "Do you understand?" Petitioner responded, "Yes, sir." Id. The judge's description of the offense to which petitioner pleaded guilty maps onto § 53a-60(a)(2). See id.

In Moreno, the Second Circuit stated that, "[n]either the description of the charge at the plea colloquy nor the judgment of conviction identified which of [§ 53a-60]'s six subsections applied." 821 F.3d at 225-26. Here, in contrast, the judge's description of the charge during the plea colloquy adequately

served to identify the applicable subsection.  True, the judge did not refer to the subsection by number.  But there can be no doubt the judge was referring to subsection (2).  Therefore, I conclude that the judge's description of the charge provides sufficient proof that petitioner's guilty plea rested on the elements of the offense defined by subsection (2).

A conviction under Conn. Gen. Stat. § 53a-60(a)(2) is categorically a violent felony under the elements clause.  To violate this statute, one must both intend to cause physical injury to another and actually cause injury by means of a deadly weapon.  The Second Circuit has held that an offense having these elements is categorically a violent felony under the ACCA. See United States v. Walker, 442 F.3d 787, 788 (2d Cir. 2006) (attempted assault in the second degree as similarly defined in New York is categorically a violent felony).[4]

### 2. Georgia Conviction for Aggravated Assault

On May 5, 2006, petitioner was convicted of aggravated assault in violation of Georgia Code § 16-5-21.  At the time of his conviction, the statute defined aggravated assault as follows:

---

[4] Even though I readily conclude that the judge's description of the offense during the plea colloquy is sufficient to establish that petitioner's guilty plea necessarily rested on the elements set forth in subsection (2), a certificate of appealability is granted on this issue as well.

11

> (a) A person commits the offense of aggravated assault when he or she assaults:
>   (1) With intent to murder, to rape, or to rob;
>   (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; or
>   (3) A person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.

Ga. Gen. Stat. § 16-5-21 (effective until June 30, 2006). "Assault," in turn, was defined as "(1) "[A]ttempt[ing] to commit a violent injury to the person of another; or (2) Commit[ting] an act which places another person in reasonable apprehension of immediately receiving a violent injury." Ga. Gen. Stat. § 16-5-20(a) (effective until June 20, 2006).

The Eleventh Circuit has determined that the aggravated assault statute is "clearly divisible as to the aggravator component of the statute." United States v. Morales-Alonso, 878 F.3d 1311, 1316 (11th Cir. 2018). In other words, the statute sets forth three different crimes, each involving a criminal assault aggravated by one of the three enumerated statutory factors. Id. A court may therefore use the modified categorical approach, look at the subsection the defendant violated, and determine whether it constitutes a violent felony. Id.

Petitioner contends that the record fails to establish the subsection under which he pleaded guilty and not every subsection has as an element the use, attempted use or threatened use of violent force.  With regard to the latter point, petitioner may be correct.  Georgia's assault statute, Ga. Gen. Stat. § 16-5-20(a), is unusual in that a violation does not require proof of specific intent to cause reasonable apprehension of imminent harm.  See Patterson v. State, 299 Ga. 491, 493-94 (2016).  All that is required is the general intent to do the act that causes the reasonable apprehension.  Id.  If the act that places another in reasonable apprehension involves use of a deadly weapon, such as a handgun, or an object likely to cause serious injury when used offensively, such as a car, the assault may be punishable as an aggravated assault in violation of § 16-5-21(a)(2).  See Patterson, 299 Ga. at 495; see also id. at 513-14 (Blackwell, J., dissenting).

The government argues that even if a violation of subsection (2) of Georgia's aggravated assault statute is not categorically a violent felony, petitioner's conviction qualifies as an ACCA predicate because his guilty plea necessarily rested on a violation of subsection (1), punishing assault with intent to murder, rape or rob.  The government relies on a court record of petitioner's conviction, entitled "Final Disposition."  EC 11-6, 2.  The document shows that

petitioner was charged with "rape" and, after plea negotiations, pleaded guilty to a "lesser included offense" of "aggravated assault." On the basis of this record, the government argues that petitioner's guilty plea must have been based on subsection (1). I agree.

No case has been cited or found addressing the issue whether a violation of § 16-5-21(a)(1) categorically qualifies as a violent felony under the ACCA. However, petitioner does not suggest that one can (a) assault a victim, (b) with intent to murder, rape or rob the victim, (c) by an act that puts the victim in reasonable apprehension of immediately receiving a violent injury, (d) without using, attempting to use or threatening to use physical force. Such a suggestion would be unavailing in any event. To come up with a scenario in which a person could violate this subsection of the statute without using, attempting to use or threatening to use violent force requires use of "legal imagination," which courts have been cautioned to avoid. See Moncrieffe v. Holder, 569 U.S. 184, 191 (2013). To conclude that a conviction under this subsection is not categorically a predicate offense, there would have to be a realistic probability, not a theoretical possibility, that the state would use the statute to prosecute non-predicate conduct.

See id. Given the current state of the law, no such realistic probability exists.[5]

III. Conclusion

The motion to vacate petitioner's sentence is hereby denied. A certificate of appealability is set forth below. The Clerk may enter judgment and close the case.

So ordered this 26th day of September, 2019.

/s/ RNC
Robert N. Chatigny
United States District Judge

### Certificate of Appealability

A certificate of appealability is granted with regard to the following issues: (1) whether the collateral attack waiver bars petitioner's claim; if not, (2) whether the record is sufficient to support a finding that he was convicted of violating Conn. Gen. Stat. § 53a-60(a)(2); and, if not, (3) whether his aggravated assault conviction qualifies as a violent felony under the ACCA.

---

[5] Whether a conviction under Georgia's aggravated assault statute is categorically a violent felony is the subject of ongoing litigation in the Eleventh Circuit. See United States v. Moss, 920 F.3d 752, 758 (11th Cir. 2019), reh'g en banc granted and vacated by 928 F.3d 1340 (11th Cir. 2019). Accordingly, a certificate of appealability is granted with regard to the government's reliance on petitioner's aggravated assault conviction as support for his enhanced sentence.